**Otto F. RIVERA–BOTTZECK, Plaintiff–Appellant,**

v.

**Joseph ORTIZ, Executive Director of the Colorado Department of Corrections; Bill Zalman; Jeneane Miller; Jeff Stanley; and Sharon Martinez, Defendants–Appellees.**

No. 04CA1628.

Colorado Court of Appeals, Div. V.

Feb. 23, 2006.

Otto F. Rivera–Bottzeck, Pro Se.

John W. Suthers, Attorney General, James X. Quinn, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

HAWTHORNE, J.

In this civil action seeking an inmate's referral to a community corrections program, plaintiff, Otto F. Rivera–Bottzeck, appeals the judgment dismissing, pursuant to C.R.C.P. 12(b)(5), his complaint against defendants, Joseph Ortiz, Executive Director of the Colorado Department of Corrections (DOC), and other DOC personnel. We affirm.

While he was incarcerated, Rivera–Bottzeck filed a complaint against DOC personnel, alleging that they abused their discretion and exceeded their authority by failing to refer him for placement in a community corrections program and by enacting administrative regulations that denied him such relief. He sought judicial review under C.R.C.P. 106(a)(4) and mandamus relief under C.R.C.P. 106(a)(2) compelling defendants to refer him to community corrections. The trial court dismissed his complaint, concluding that he had an active Immigration and Naturalization Service (INS) detainer which prevented the relief he requested.

I.

As an initial matter, Rivera–Bottzeck asserts that the trial court "lacked authority" to grant defendants' motion to dismiss, because the trial court made unsupported findings of fact. Specifically, he claims that the trial court made a factual finding that a prisoner with an INS detainer would be inappropriate for community corrections placement because he would be a flight risk. We disagree that the court made such a finding.

A complaint may be dismissed pursuant to C.R.C.P. 12(b)(5) when it fails to state a claim upon which relief may be granted. A motion under C.R.C.P. 12(b)(5) tests the formal sufficiency of the complaint. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 911 (Colo. 1996). Under this rule, a court may consider only those matters stated in the complaint and must accept all allegations of material fact as true. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo.1999).

Our review of the trial court's judgment indicates that the trial court did not make a factual finding regarding the flight risk of an individual under an INS detainer. Rather, the trial court concluded, as a matter of law, that it was reasonable for the General Assembly to conclude that an INS detainer could be a factor affecting an incarcerated person's flight risk. Rivera–Bottzeck concedes in his complaint that he has an INS detainer lodged against him. Because the trial court did not make a factual finding, we discern no basis for holding that the trial court exceeded its authority.

II.

Rivera–Bottzeck next contends that he was entitled to relief in the nature of mandamus compelling defendants to refer him to community corrections. We disagree.

Mandamus relief may be sought to compel a governmental body to perform an official act specifically required by law. C.R.C.P. 106(a)(2). Such relief is appropriate when (1) a plaintiff has a clear right to the relief requested; (2) the agency has a clear duty to perform the act requested; and (3) no other adequate remedy is available to the plaintiff. *Lazuk v. Sch. Dist. No. 1*, 22 P.3d 548, 550 (Colo.App.2000). Mandamus is an extraordinary remedial process awarded in the exercise of sound judicial discretion, not as a matter of legal right. *Sherman v.*

*City of Colo. Springs Planning Comm'n,* 763 P.2d 292 (Colo.1988).

### A.

Rivera–Bottzeck asserts that he had a clear right to be referred to community corrections and that the trial court incorrectly interpreted § 18–1.3–301(2)(b), C.R.S.2005, and erred when it dismissed his complaint. He maintains that he was entitled to mandamus relief requiring the transfer because his active INS detainer is not a "felony warrant or detainer" within the meaning of the statute. We disagree.

When interpreting the meaning of a statute, our task is to ascertain and give effect to the intent of the General Assembly. *People v. Rockwell,* 125 P.3d 410, 417 (Colo.2005). To do so, we look first to the plain language of the statute. If the language is clear and unambiguous, we need not resort to interpretive rules of statutory construction. *Bloomer v. Bd. of County Comm'rs,* 799 P.2d 942, 944 (Colo.1990), *overruled on other grounds by Bertrand v. Bd. of County Comm'rs,* 872 P.2d 223 (Colo.1994). If, however, the statutory language does not unambiguously establish the General Assembly's purpose in enacting the statute, we may rely on other factors, including legislative history, prior law, the consequences of a given construction of the statute, and the end to be achieved by the statute, to determine its meaning. *People v. Cooper,* 27 P.3d 348, 354 (Colo.2001).

The construction of statutes is a question of law. *Bloomer v. Bd. of County Comm'rs, supra,* 799 P.2d at 944.

Section 18–1.3–301(2), C.R.S.2005, provides in pertinent part as follows:

> (a) The executive director of the department of corrections may transfer any offender who is eligible pursuant to this subsection (2) to a community corrections program if such offender is accepted for placement by a community corrections board pursuant to section 17–27–103, C.R.S., and a community corrections program pursuant to section 17–27–104, C.R.S.
>
> (b) *Unless the offender has an active felony warrant or detainer* or has refused community placement, the executive director of the department of corrections shall refer for placement in a community corrections program:
>
> (I) Any offender who successfully completes a regimented inmate discipline program pursuant to article 27.7 of title 17, C.R.S., within twenty-eight months prior to the offender's parole eligibility date;
>
> (II) Any offender who is not serving a sentence for an offense referred to in section 18–1.3–406 and who has displayed acceptable institutional behavior sixteen months prior to such offender's parole eligibility date; and
>
> (III) Any other offender who has displayed acceptable institutional behavior one hundred eighty days prior to such offender's parole eligibility date.

(Emphasis added.)

Thus, the statute requires the DOC to refer certain offenders to community corrections "[u]nless the offender has an active felony warrant or detainer." Rivera–Bottzeck argues that this language does not encompass an INS detainer, which he contends is a civil, not a criminal, detainer. We are not persuaded.

The statute refers to "an active felony warrant or detainer." *Black's Law Dictionary* 480 (8th ed.2004) defines the word "detainer" as including "[a] writ authorizing a prison official to continue holding a prisoner in custody." A detainer has further been defined in case law as "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *People v. Moody,* 676 P.2d 691, 693 n. 2 (Colo.1984) (quoting *United States v. Mauro,* 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978)). Where a detainer is filed but there are no pending criminal charges against the inmate in a foreign jurisdiction, a detainer is viewed as "an *internal administrative mechanism* to assure that an inmate subject to an unexpired term of confinement will not be released from custody" until the foreign jurisdiction filing the detainer has had an opportunity to act. *See Reed v. People,* 745 P.2d 235, 240

(Colo.1987) (quoting *Moody v. Daggett,* 429 U.S. 78, 81 n. 2, 97 S.Ct. 274, 275, 50 L.Ed.2d 236 (1976)) (emphasis in original).

Rivera–Bottzeck concedes that his INS detainer is a "detainer," but asserts that the statute is intended to encompass only "criminal" detainers, as is signified by the phrase "felony warrant or detainer." We conclude that the plain language of the statute is unclear whether the term "felony" modifies only the term "warrant" or also modifies the term "detainer." Thus, we look to other guideposts in interpreting the statute. In doing so, we are mindful that the only question properly before us is whether an INS detainer would prevent transfer of an inmate to community corrections under § 18–1.3–301(2)(b). We conclude that it does.

When construing a statute, we afford deference to the interpretation given the statute by the officer or agency charged with its administration. *El Paso County Bd. of Equalization v. Craddock,* 850 P.2d 702 (Colo.1993). Administrative interpretations are most helpful when the subject involved calls for the exercise of technical expertise or when, as here, the statutory language is susceptible of more than one reasonable interpretation. *El Paso County Bd. of Equalization v. Craddock, supra,* 850 P.2d at 705.

The DOC's administrative regulations were amended in 2003 to clarify that immigration detainers prohibit community corrections placement. *See* Dep't of Corr. Admin. Reg. No. 250–03. Our review of the legislative history did not provide any guidance in interpreting the statute. Hence, we conclude that, given the statutory language at issue here, the administrative interpretation is entitled to deference.

Further, the agency's interpretation is consistent with generally applied rules of statutory construction. Ordinarily, the use of the word "or" is assumed to demarcate different categories. *Bloomer v. Bd. of County Comm'rs, supra,* 799 P.2d at 946. Thus, "felony warrant" is a different category from "detainer."

Rivera–Bottzeck asserts that we should discredit the DOC's interpretation because the agency exceeded its authority in promulgating this regulation. However, plaintiff's assertions, as they relate to inmate placement, assignment, management, discipline, or classification, are not subject to judicial review under the Administrative Procedures Act, § 24–4–103, C.R.S.2005. Section 17–1–111, C.R.S.2005.

Accordingly, we agree with the trial court's interpretation of § 18–1.3–301(2)(b) that the word "felony" does not modify the word "detainer" and conclude that Rivera–Bottzeck was properly excluded from consideration for community corrections placement because of his INS detainer.

### B.

Rivera–Bottzeck next urges us to remand for a hearing in which he could present evidence as to whether, despite his INS detainer, he qualifies as a flight risk. We conclude we have no basis to do so.

Section 18–1.3–301(2) does not allow for a hearing or other determination as to whether an individual poses a flight risk notwithstanding the existence of a detainer. Moreover, an inmate has no constitutional right to a particular classification or placement in a particular correctional institution, even where the placement he or she receives is "substantially more burdensome." *See Reed v. People, supra,* 745 P.2d at 239–40 n. 5 (quoting *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 2538–39, 49 L.Ed.2d 451 (1976)).

Thus, we conclude that the trial court properly dismissed the complaint.

### III.

Rivera–Bottzeck also contends that the trial court erred in dismissing his claim that the DOC improperly included immigration detainers as an exclusionary factor for community corrections placement and therefore abused its discretion in failing to refer him for community corrections placement. Specifically, he asserts that this issue is subject to review under C.R.C.P. 106(a)(4). We disagree.

Administrative or ministerial actions are not subject to review under C.R.C.P.

106(a)(4). *Sherman v. City of Colo. Springs Planning Comm'n, supra.* Judicial review under C.R.C.P. 106(a)(4) is limited to judicial and quasi-judicial agency action. *State Farm Mut. Auto. Ins. Co. v. City of Lakewood,* 788 P.2d 808 (Colo.1990).

In determining whether an action is quasi-judicial or administrative, we look to the nature of the governmental decision and the process by which it is reached. Judicial or quasi-judicial action is characterized by the following factors: (1) a state or local law requiring that notice be given before the action is taken; (2) a state or local law requiring a hearing before the action is taken; and (3) a state or local law requiring that the action result from the application of the facts of a specific case to criteria established by law. *Gilpin County Bd. of Equalization v. Russell,* 941 P.2d 257, 262 (Colo.1997).

Here, neither local nor state law requires that the DOC conduct a hearing before an inmate is referred for placement in a community corrections program. Accordingly, Rivera–Bottzek's claims are not subject to review under C.R.C.P. 106(a)(4).

The judgment is affirmed.

Judge WEBB and Judge RUSSEL concur.