**SIERRA CLUB, Plaintiff–Appellant and Cross–Appellee,**

v.

**Graham BILLINGSLEY, in his official capacity as Director of Boulder County Land Use Department, and Boulder County Board of Adjustment, Defendants–Appellees and Cross–Appellants,**

and

**Cemex, Inc., Defendant–Intervenor– Appellee and Cross–Appellant.**

No. 05CA2607.

Colorado Court of Appeals, Div. II.

June 28, 2007.

John M. Barth, Hygiene, Colorado, for Plaintiff–Appellant and Cross–Appellee.

H. Lawrence Hoyt, Boulder County Attorney, Pat A. Mayne, Deputy Boulder County Attorney, Boulder, Colorado, for Defendants–Appellees and Cross–Appellants.

Petros & White, LLC, Raymond L. Petros, Jr., Jennifer Soice Pelz, Denver, Colorado, for Defendant–Intervenor–Appellee and Cross–Appellant.

Opinion by Judge TERRY.

In this appeal, we review under C.R.C.P. 106(a)(4) a determination of defendant Boulder County Board of Adjustment (BOA) applying provisions of the Boulder County Land Use Code (Code) to a special use permit (Permit) issued to the predecessor in interest of intervenor, Cemex, Inc. The Permit conditionally approved the use of discarded tires as fuel for the manufacturing of cement. We also review a claim that defendant Graham Billingsley, in his official capac-

ity as Director of the Boulder County Land Use Department, violated the Colorado Open Records Act, § 24–72–201, et seq., C.R.S. 2006 (CORA).

We conclude the BOA did not abuse its discretion in its application of the Code to the Permit. We also conclude the district court must conduct further proceedings to determine whether Billingsley violated CORA, and whether plaintiff, Sierra Club, may be entitled to costs and attorney fees.

## I. Issues on Appeal

Sierra Club appeals from (1) the district court's April 11, 2005 order upholding a determination by the BOA and Billingsley that the Permit had not lapsed under Article 4–604 of the Code; and (2) the district court's October 24, 2005 order denying Sierra Club's CORA claim and its motion for reconsideration and addressing other procedural issues. The BOA and Billingsley cross-appeal portions of the district court's October 24, 2005 order. We vacate the district court's April 11, 2005 order, affirm in part and vacate in part the district court's October 24, 2005 order, and remand with directions.

## II. C.R.C.P. 106 Claim as to Special Use Permit

### A. Facts

In 1990, the Board of County Commissioners of Boulder County passed a resolution issuing the Permit, under which Cemex's predecessor, Southwestern Portland Cement Co, was allowed to burn discarded tires as fuel for its manufacturing operations. Under the Permit, Southwestern burned tires for fuel until 1993.

In 1996, the Commissioners passed an amendment to the Code, codified as Article 4–604 (lapse provision), which provides for the lapse of special use permits if certain conditions are not met.

In 2002, Cemex notified Boulder County and the State of Colorado that it intended to resume burning tires as a fuel source at the cement plant. On September 5, 2002, Billingsley sent a letter to Cemex acknowledging that the Permit was still in effect because the lapse provision did not apply retroactively.

Sierra Club appealed Billingsley's determination to the BOA, which upheld Billingsley's determination.

Sierra Club also filed this action against Billingsley and the BOA in Boulder County District Court, seeking review under C.R.C.P. 106(a)(4) of the BOA's determination. Cemex intervened. On March 4, 2003, the district court ruled that the lapse provision applied to the Permit, and remanded the case to the BOA for a factual finding of whether there had been a five-year period of inactivity under the Permit since the 1996 enactment of the lapse provision.

Pursuant to the remand, Billingsley conducted an investigation and issued findings that there had not been a complete cessation of all activity at the cement plant related to the Permit and therefore, that the Permit had not lapsed. The BOA affirmed Billingsley's determination on September 3, 2003.

Sierra Club then moved to amend its complaint to add a cause of action challenging the September 3, 2003 decision of the BOA. The district court granted the motion. In an April 11, 2005 order, the district court affirmed the BOA's determination that there had not been a continuous five-year period of inactivity under the Permit, and that the Permit was therefore still in effect. Sierra Club then appealed to this court.

### B. Lapse Provision

Sierra Club's appeal focuses on the district court's April 11, 2005 order affirming the BOA's determination that there had not been a five-year period of inactivity under the Permit. In their response, the BOA and Billingsley focus on the propriety of the district court's March 4, 2003 order concluding that the lapse provision applied to the Permit. Both orders dealt with interpretation of the lapse provision. We begin our discussion by addressing the earlier order.

### 1. Standard of Review

When reviewing an agency's decision under C.R.C.P. 106(a)(4), we sit in the same position as the district court. *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo.2000).

■ Review of the judicial or quasi-judicial functions of an administrative agency under C.R.C.P. 106(a)(4) is "limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before" the agency. C.R.C.P. 106(a)(4)(I); *Fire House Car Wash, Inc. v. Bd. of Adjustment for Zoning Appeals,* 30 P.3d 762, 766 (Colo.App.2001). In determining whether there was an abuse of discretion, courts may consider whether there was a misinterpretation or misapplication of governing law. *Alward v. Golder,* 148 P.3d 424, 428 (Colo.App. 2006); *Droste v. Bd. of County Comm'rs,* 85 P.3d 585, 590 (Colo.App.2003).

The supreme court has described the rules for interpreting land use ordinances as follows:

> Courts interpret the ordinances of local governments, including zoning ordinances, as they would any other form of legislation. As such, zoning ordinances are subject to the general canons of statutory interpretation.

> When construing a statute or ordinance, courts must ascertain and give effect to the intent of the legislative body. Moreover, courts must refrain from rendering judgments that are inconsistent with that intent. To determine legislative intent, we therefore look first to the plain language of the ordinance. If courts can give effect to the ordinary meaning of words used by the legislature, the ordinance should be construed as written, being mindful of the principle that courts presume that the legislative body meant what it clearly said. Finally, if the statutory language is clear and unambiguous, the language should not be subjected to a strained or forced interpretation.

*City of Colorado Springs v. Securcare Self Storage, Inc.,* 10 P.3d 1244, 1248–49 (Colo. 2000) (citations omitted); *see also International Paper Co. v. Cohen,* 126 P.3d 222, 226 (Colo.App.2005)(discussing principles of interpretation for city ordinance).

■ If the language of an administrative rule is ambiguous or unclear, we give great deference to an agency's interpretation of a rule it is charged with enforcing, and its interpretation will be accepted if it has a reasonable basis in law and is warranted by the record. *See Rivera–Bottzeck v. Ortiz,* 134 P.3d 517, 521 (Colo.App.2006); *Fire House Car Wash, Inc. v. Bd. of Adjustment for Zoning Appeals, supra; Regents of Univ. of Colo. v. City & County of Denver,* 929 P.2d 58, 61 (Colo.App.1996); *see also Quaker Court Ltd. Liab. Co. v. Bd. of County Commr's,* 109 P.3d 1027, 1030 (Colo.App. 2004) (presumption of validity is accorded to determination by county board of adjustment, and burden is on party challenging board's determination to overcome the presumption).

■ We consider an administrative agency's interpretation as advisory, not binding. *Stevinson Imports, Inc. v. City & County of Denver,* 143 P.3d 1099, 1101 (Colo. App.2006). Administrative interpretations are most helpful when the subject involved calls for the exercise of technical expertise or when the statutory language is susceptible of more than one reasonable interpretation. Where the governmental body's interpretation is consistent with generally applied rules of statutory construction, the administrative interpretation is entitled to deference. *Rivera–Bottzeck v. Ortiz, supra,* 134 P.3d at 521.

### 2. Interpretation of Lapse Provision

■ We conclude that the zoning provisions at issue here are susceptible of more than one reasonable interpretation and are therefore ambiguous. Because the BOA's interpretation of these provisions is reasonable, we adopt that interpretation.

Article 4–604 of the Code states, in relevant part:

> B. Any approved use by special review which does not significantly commence operation or construction on any portion of the special use permit within five calendar years after the use has received Board approval, shall lapse, and shall be of no further force and effect unless a new discretionary approval is granted under this Code. If a vesting period of longer than five years is expressly approved as part of the special use permit, the approval

shall lapse if operation or construction is not commenced within the vesting period.

C. Any approved use by special review which commences operation or construction as required under Subsection (B), immediately above, shall lapse, and shall be of no further force and effect, if the use is inactive for any continuous five-year period. If this period of inactivity occurs, the use may not be recommenced without a new discretionary approval granted under this Code. An approved special use shall be deemed inactive under this Subsection (C) if there has been no activity under any portion of the special use permit for a continuous period of five years or more as a result of causes within the control of the special use permittee or agent.

Sierra Club argues that the phrase "[a]ny approved use by special review" in Article 4–604(B) & (C) indicates that the Article is intended to apply to any special use permit, regardless of when it was approved, and that the BOA thus abused its discretion when it did not apply the lapse provision to the Permit. However, this interpretation, which was accepted by the district court, does not take into account the ambiguity created when Article 4–604 is read in conjunction with Article 1–900 (addressing construction of the code provisions).

We are persuaded by the BOA's position that the lapse provision must be read in conjunction with Article 1–900, which provides a rule for construction of the code provisions. The BOA's interpretation accords with generally applied rules of statutory construction. *See, e.g., Huddleston v. Bd. of Equalization,* 31 P.3d 155, 159 (Colo.2001) (statutes should not be read in isolation, but instead should be read together with all other statutes relating to the same subject or having the same general purpose, to the end that a statute's intent may be ascertained and absurd consequences avoided).

Article 1–900 states, "It is presumed that the requirements of this Code apply to future actions unless otherwise stated." The district court interpreted this language to re-

quire that the lapse provision be applied to the Permit as of the date of the provision's enactment, even though the Permit was issued before the lapse provision was enacted. Although the district court's interpretation is reasonable, it is not the only reasonable interpretation. Because the Code provisions are ambiguous, we defer to the BOA's reasonable interpretation of them.

Billingsley addressed whether Article 4–604 was intended to apply to permits issued before its enactment, and gave the following testimony at the November 6, 2002 hearing before the BOA:

> In 1996, the County passed amendments to the special use regulations of the Land Use Code providing for the lapse of special use permits. [T]his is a quote from the regulations: "[if there is] no activity under any portion of the special use permit for a continuous period of five years or more." This permit was not—this amendment was not made retroactive to pre-existing permits which applicants had in good faith activated, or implemented.
>
> . . . .
>
> [Applying 4–604(C)] I feel it is inappropriate to retroactively apply a provision of the Land Use Code that was activated, or implemented, under a permit approved prior to the lapsed provision coming into effect with no notice to the permit holder that such use would, or could, be so lapsed.
>
> . . . .
>
> The County could have[,] as it has done in other amendments to the Land Use Code, [applied] the regulations to existing approvals either through amendments itself, or the resolution of the approval.
>
> . . . .
>
> Since 4–604 does not state that it applies to permits apply [sic] prior to its enactment[;] this rule of construction in Article [1–900] requires that we cannot apply the lapsed provision, or [sic] retroactively to Cemex, or anyone else in similar circumstances.

Billingsley also made a written recommendation to the BOA regarding the application of Article 4–604 to special use permits that existed before its implementation. This recommendation stated, in relevant part:

The County could have, as it has done in other amendments to the Land Use Code, applied the regulations to existing approvals, either through the amendment itself, or the resolution of approval. For example, when the County passed the site plan review lapse provision, we applied it to all unvested (no building permit applied for) site plan reviews with the three year lapse period starting the day of the regulation amendment, not the date of previously approved site plan reviews.... We did not take a similar course with the special use lapse provisions.

Billingsley—who had a role in writing the provision at issue—interpreted the language of Article 4–604 in conjunction Article 1–900, and concluded that Article 4–604 could not be applied to the Permit, because the Permit was issued prior to enactment of the lapse provision. The BOA adopted Billingsley's interpretation, which is a reasonable construction of the Code provisions, especially in light of the record. *See Rivera–Bottzeck v. Ortiz, supra,* 134 P.3d at 521 (we afford deference to the interpretation of a statute made by the officer or agency charged with its administration).

Accordingly, we conclude that the BOA did not abuse its discretion when it ruled that the lapse provision does not apply to the Permit because the Permit was issued before the provision's enactment. *See Abbott v. Bd. of County Comm'rs,* 895 P.2d 1165, 1167 (Colo.App.1995) (if there is a reasonable basis for an administrative agency's application of the law, the decision may not be set aside on review).

We therefore conclude the district court abused its discretion when it failed to adopt the BOA's reasonable interpretation of the Code provisions, *see Rivera–Bottzeck v. Ortiz, supra,* 134 P.3d at 521, and when it ordered a remand to the BOA for additional findings based on the court's own interpretation of those provisions.

### 3. Remaining Issues

The BOA, Billingsley, and Cemex raise a number of jurisdictional arguments regarding Sierra Club's sixth cause of action. However, because we have concluded that the BOA did not abuse its discretion when it determined that the lapse provision does not apply to the Permit, and that the remand for a second BOA proceeding was an abuse of the district court's discretion, judgment must enter against Sierra Club as to its sixth cause of action. Therefore, the jurisdictional arguments pertaining to that sixth cause of action are moot.

### III. Colorado Open Records Act

#### A. Facts

In response to Billingsley's September 5, 2002 determination that the lapse provision did not apply to the Permit, Sierra Club submitted a written request under CORA to review all documents considered or relied upon by the Land Use Department in reaching that determination. Sierra Club also requested all correspondence or documents with Cemex, or its predecessors in interest, regarding the application of Article 4–604; all correspondence or documents between any other branch of government and the Land Use Department related to the determination; all documents reflecting any other interpretation of Article 4–604; all documents related to any determination by the department that any approved use under the Permit had lapsed pursuant to Article 4–604; and a list identifying the date, author, recipient, and subject matter of each document being withheld under the CORA request.

Billingsley responded by stating that all records relating to the determination were available for inspection, except for "correspondence between the County Attorney's Office and [the Land Use Department] which would be confidential attorney-client information."

Sierra Club replied: "As required by the Open Records Act, please provide [the Club] with an index identifying all documents being withheld, as well as the specific statutory basis for your withholding of each document."

Sierra Club reviewed the documents provided by the Land Use Department. Included with the documents was a cover letter from Billingsley stating that the only docu-

ments not provided were "privileged e-mails between [his] office and the County Attorney's Office[,] which e-mails are both work product and privileged attorney-client communications under the terms of the Open Records Act."

After reviewing the documents, Sierra Club sent a letter to Billingsley stating that it was unable to find any documents "(1) discussing Cemex's proposal to resume tire burning; (2) discussing the applicability of [Article 4–604(C)] to the [Permit]; or (3) supporting [the] Department's recent determination that the 1990 special use permit/certificate of designation for this use is still in effect."

The Boulder County Attorney responded, stating that no documents existed that addressed the three areas listed in Sierra Club's letter, and that "Attorney-client work product is privileged under the Open Records Act," and "all documents that satisfy your request have been produced for your inspection."

Thereafter, Sierra Club asserted a claim in this case, alleging that Billingsley, in his capacity as a public official, violated CORA by not providing all the public records that were responsive to its 2002 request and by not providing a privilege log detailing the documents being withheld from production and the reasons for withholding them. Sierra Club and Billingsley stipulated that the alleged privileged documents would be provided to the district court for in camera review, and Billingsley provided the documents to the district court.

In September 2005, the district court denied Sierra Club's motion for summary judgment on its CORA claim, partially on the ground that "the remedy for CORA violations is an in camera review of the documents so that the Court can determine whether the release of the documents is appropriate under CORA." Later that month, more than three years after Sierra Club's CORA request, the County Attorney provided certain e-mails to Sierra Club, with respect to which the county had previously asserted privileges. On October 24, 2005, the district court dismissed the CORA claim as moot.

## B. Denial of Summary Judgment

■ Sierra Club contends that the district court erred when it denied the Club's motion for summary judgment on its CORA claims. We decline to address this argument because an order denying a motion for summary judgment is interlocutory and is not appealable. *Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244, 1247 (Colo.1996).

## C. Mootness

Sierra Club contends the district court erred when it dismissed the CORA claims as moot. We agree.

In § 24–72–204, C.R.S.2006, CORA provides, in relevant part:

(1) The custodian of any public records shall allow any person the right of inspection of such records or any portion thereof except on one or more of the following grounds . . .:

. . . .

(c) Such inspection is prohibited by rules promulgated by the supreme court or by the order of any court.

. . . .

(5) . . . [A]ny person denied the right to inspect any record covered by this part 2 may apply to the district court of the district wherein the record is found for an order directing the custodian of such record to show cause why the custodian should not permit the inspection of such record. . . . Hearing on such application shall be held at the earliest practical time. Unless the court finds that the denial of the right of inspection was proper, it shall order the custodian to permit such inspection and shall award court costs and reasonable attorney fees to the prevailing applicant in an amount to be determined by the court; except that no court costs and attorney fees shall be awarded to a person who has filed a lawsuit against a state public body or local public body and who applies to the court for an order pursuant to this subsection (5) for access to records of the state public body or local public body being sued if the court finds that the

records being sought are related to the pending litigation and are discoverable pursuant to chapter 4 of the Colorado rules of civil procedure. In the event the court finds that the denial of the right of inspection was proper, the court shall award court costs and reasonable attorney fees to the custodian if the court finds that the action was frivolous, vexatious, or groundless.

■ To show that CORA applies, a plaintiff must show that the public entity in question (1) improperly (2) withheld (3) a public record. All three prongs must be shown, or the act will not apply. *Wick Commc'ns Co. v. Montrose County Bd. of County Comm'rs,* 81 P.3d 360, 363 (Colo.2003).

■ Here, Sierra Club and Billingsley stipulated to in camera review of the claimed privileged documents. In its order dismissing Sierra Club's CORA claim, the district court said, "the first claim has been resolved by stipulation. Therefore, the motion for summary judgment on the first claim for relief is moot."

However, a court's review of a CORA claim does not end when parties have stipulated to in camera review of the disputed documents. Once submitted for review, the court must determine whether a document is subject to a CORA exception. *See* § 24–72–204(5). If a document was withheld that was not subject to an exception, the prevailing applicant may be entitled to court costs and reasonable attorney fees as determined by the court. *See* § 24–72–204(5) (subject to the exceptions listed).

Therefore on remand the district court must determine whether CORA was violated and, if it was, whether Sierra Club may be entitled to an award of court costs and attorney fees.

### D. Impact of CORA Claim on the BOA's Hearing

Sierra Club contends the district court erred by not ruling that Boulder County wrongfully withheld at least one document until after evidentiary hearings were completed, thus preventing Sierra Club from offering the document for admission into the administrative record prior to issuance of the BOA's decision. It contends the withheld document provides proof of its interpretation of Article 4–604.

■ As noted above, we remand the CORA claim to the district court for a determination of whether CORA was violated, and if so, whether Sierra Club may be entitled to an award of costs and attorney fees. However, to the extent Sierra Club contends the outcome of the administrative hearing might have been different if Boulder County had timely produced the withheld document and it had been entered into the administrative record, we conclude (1) there is no remedy provided for such a situation under CORA, other than costs and attorney fees; and (2) even if the document had been admitted into the administrative record, it would not have affected our determination of the merits of this appeal.

The disputed document is a copy of an e-mail from an employee of Boulder County's Land Use Department to Billingsley, stating that "it's clear that the special use in this case has lapsed."

Review of the BOA's decision is limited to a determination of whether it exceeded its jurisdiction or abused its discretion, "based on the evidence in the record before [it]." *See* C.R.C.P. 106(a)(4)(I). Thus, review both in the district court and here is limited to consideration of the BOA's decision based upon the evidence that actually appeared in the BOA's record. Therefore, because the e-mail was not part of the administrative record, the district court was correct in declining to consider it, and we may not review it on appeal.

Even assuming that Boulder County's withholding of the document was in violation of CORA, neither CORA nor C.R.C.P. 106(a)(4) contains any provision that would permit a remand to the BOA to reconsider its ruling in light of the withheld document. *Cf.* C.R.C.P. 106(a)(4)(IX) (permitting remand to administrative agency when it has failed to make findings of fact or conclusions of law necessary for review of its action).

Remedies for wrongful withholding of documents under CORA are limited to an order

to produce the documents for inspection and an award of costs and attorney fees. Section 24–72–204(5); *see also People in Interest of A.A.T.,* 759 P.2d 853, 855 (Colo.App. 1988)(§ 24–72–204(5) and (6), C.R.S. (1982 repl. vol. 10), provide exclusive procedures to resolve disputes concerning public records accessibility). Any other remedy for such a violation would need to be enacted by the General Assembly, and in the absence of such legislation, we are not at liberty to craft such a remedy. *Bunch v. Indus. Claim Appeals Office,* 148 P.3d 381, 385 (Colo.App. 2006).

Even if the appropriate remedy were to remand for inclusion of the e-mail in the BOA's administrative record, however, that document would not affect our conclusion that the BOA did not abuse its discretion when it ruled that the lapse provision did not apply to the Permit. Because the BOA determined the lapse provision did not apply, the e-mail's assertion that the special use had lapsed was irrelevant.

The district court's April 11, 2005 order is vacated. That portion of the October 24, 2005 order ruling on the motion for reconsideration is vacated. Those portions of the October 24, 2005 order ruling on the first and second claims for relief are reversed. This case is remanded to the district court with instructions to (1) enter judgment against Sierra Club on all claims except its CORA claim; and (2) reconsider Sierra Club's CORA claim. In all other respects, the October 24, 2005 order is affirmed.

Judge ROTHENBERG and Judge LOEB concur.