The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
December 15, 2022

**2022COA143**

**No. 22CA0204, *Roane v. Archuleta* — Government — Public Records — Colorado Open Records Act — Public Records Open to Inspection — Allowance or Denial of Inspection; Civil Procedure — Disclosure and Discovery**

A division of the court of appeals considers whether an individual who is litigating against a public entity, and who did not propound discovery requests in that litigation, has the right to obtain relevant documents from the public entity through a records request under the Colorado Open Records Act (CORA). The division rejects the appellant's contention that the Colorado Supreme Court's decisions in *Martinelli v. District Court*, 199 Colo. 163, 612 P.2d 1083 (1980), and *City of Colorado Springs v. White*, 967 P.2d 1042 (Colo. 1998), preclude the appellee from employing CORA to obtain relevant documents from a public entity that is an adverse party in pending litigation. The division holds that the lack of a

"pending litigation" exception in CORA provides further support for its decision in this case. Accordingly, the division affirms the district court's inspection order.

COLORADO COURT OF APPEALS                                    **2022COA143**

Court of Appeals No. 22CA0204
Archuleta County District Court No. 21CV30003
Honorable Jeffrey R. Wilson, Judge

Matt Roane,

Plaintiff-Appellee,

v.

Kristy Archuleta, in her official capacity as the Clerk and Recorder of Archuleta
County,

Defendant-Appellant.

ORDER AFFIRMED

Division A
Opinion by JUDGE LIPINSKY
Fox and Freyre, JJ., concur

Announced December 15, 2022

Matt Roane Law, Matt Roane, Pagosa Springs, Colorado, for Plaintiff-Appellee

Todd A. Weaver, County Attorney, Pagosa Springs, Colorado, for Defendant-
Appellant

¶ 1     This case presents the novel issue in Colorado of whether an individual who is litigating against a public entity, and who did not propound discovery requests in that litigation, has the right, during the pendency of the litigation, to obtain documents relevant to the litigation from the public entity through a records request under the Colorado Open Records Act, §§ 24-72-200.1 to -205.5 (CORA).  We hold that, under the facts of the case, plaintiff, Matt Roane, has the right under CORA to obtain a public record from the Archuleta County Board of County Commissioners (the Board), despite the pendency of Roane's lawsuit against the Board.  For this reason, we affirm the district court's order (the inspection order) requiring defendant, Kristy Archuleta, in her official capacity as the Clerk and Recorder of Archuleta County, to allow Roane to inspect the public record he requested.

## I.     Background and Procedural History

¶ 2     Except as noted, the underlying facts are undisputed.

¶ 3     Roane filed a declaratory judgment action against the Board for its alleged violation of Colorado's open meetings statute (the declaratory judgment case).  The declaratory judgment case was subject to the simplified procedures set forth in C.R.C.P. 16.1,

1

which require the parties to make the disclosures specified in C.R.C.P. 16.1(k)(1) and allow the limited discovery described in C.R.C.P. 16.1(k)(4). Under C.R.C.P. 16.1(k)(4)(B), Roane and the Board were limited to five document requests each. But they neither exchanged disclosures nor propounded discovery requests.

¶ 4 The parties filed cross-motions for summary judgment. While the motions were pending, Roane submitted a CORA request (the request) to Archuleta in her capacity as the Board's custodian of records. In the request, Roane sought a recording of a public Board meeting (the recording) and an email and attachments concerning the agenda for an earlier "work session" at which the Board discussed a local medical center's request for public funds to purchase COVID-19 test kits. (This appeal only involves Roane's request for the recording.)

¶ 5 According to Roane, the Board did not record the substance of its discussion of the medical center's funding request during the "work session" and, at the public Board meeting, made a "quick, ceremonial" decision to fund the test kits. Roane alleged that the Board engaged in the "substantive hard work" regarding the funding request behind closed doors at the "work session."

2

¶ 6    The parties do not dispute that the recording is a public record, that it is relevant to the declaratory judgment case, or that Roane did not submit the request to circumvent the limit of five document requests specified in C.R.C.P. 16.1(k)(4)(B). Roane said he needed the recording to obtain information for his reply in support of his pending motion for summary judgment.

¶ 7    Archuleta denied Roane's request, asserting that, under sections 24-72-203(1) and 24-72-204(1)(c), C.R.S. 2022, the recording was

> not open to inspection as "otherwise provided by law" pursuant to the Colorado Supreme Court's ruling in *Martinelli* [*v. District Court*, 199 Colo. 163, 612 P.2d 1083 (1980)], [the request] is "prohibited by rules promulgated by the supreme court" pursuant to Colorado Rule of Civil Procedure 34, and is prohibited "by the order of any court" pursuant to the Colorado Supreme Court's ruling and order in *Martinelli.*

¶ 8    After Archuleta denied the request, Roane filed a separate action against her under section 24-72-204(5) of CORA to obtain, among other relief, an order requiring Archuleta to "make the [r]ecording available for . . . Roane's inspection."

3

¶ 9     The court agreed that Roane was entitled to inspect the recording and ordered Archuleta to produce it to him.  In the inspection order, the court explained that, although Roane "could have used the discovery process to obtain the information sought in his CORA request, the discovery process was not his exclusive means for obtaining such information."  The court also noted that "nothing in the record show[ed] that any statute, rule or court order prevented [Roane] from making" the request.

¶ 10    On appeal, Archuleta contends that the court erred because, among other reasons, the inspection order was in "complete contradiction to" the Colorado Supreme Court's decisions in *Martinelli* and *City of Colorado Springs v. White*, 967 P.2d 1042 (Colo. 1998).  We disagree.

## II.    Analysis

### A.    Standard of Review and Principles of Statutory Interpretation

¶ 11    We review the construction and application of CORA de novo.  *Bjornsen v. Bd. of Cnty. Comm'rs*, 2019 COA 59, ¶ 39, 487 P.3d 1015, 1023.  "[W]hen construing the statutory language of CORA, we '. . . look first to the plain language, always striving to give effect

4

to the General Assembly's intent and chosen legislative scheme.'" *Denver Publ'g Co. v. Bd. of Cnty. Comm'rs*, 121 P.3d 190, 195 (Colo. 2005) (quoting *Sooper Credit Union v. Sholar Grp. Architects, P.C.*, 113 P.3d 768, 771 (Colo. 2005)). In addition, "we must give consistent, harmonious, and sensible effect to all parts of the statute and avoid an interpretation or construction that would render any language meaningless" and avoid "ascrib[ing] a meaning that would lead to an illogical or absurd result." *Yotes, Inc. v. Indus. Claim Appeals Off.*, 2013 COA 124, ¶ 14, 310 P.3d 288, 291.

### B.     The Applicable Law

¶ 12     Our review of the legal principles underlying this case involves four discrete steps. First, we discuss the applicable provisions of CORA. Second, we turn to the authorities on which Archuleta's argument rests — two Colorado Supreme Court cases, a formal opinion of the Colorado Attorney General, and federal cases addressing sections of the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, that Archuleta asserts are analogous to the relevant sections of CORA. Third, we consider Archuleta's public policy arguments. Fourth, we examine decisions from other jurisdictions that reinforce our reading of CORA.

### 1. The Scope and Meaning of CORA

¶ 13    CORA rests on the principle that "[a]ll public records shall be open for inspection by *any person* at reasonable times, except as provided [in the exceptions set forth in CORA] or as otherwise provided by law." § 24-72-203(1)(a) (emphasis added). The General Assembly emphasized that any exceptions to the right of inspection conferred under CORA must be "*specifically* provided by law." § 24-72-201, C.R.S. 2022 (emphasis added).

¶ 14    The General Assembly's statement of the policy underlying CORA "clearly eliminates any requirement that a person seeking access to public records show a special interest in [the subject] records in order to be permitted access thereto." *Denver Publ'g Co. v. Dreyfus*, 184 Colo. 288, 292, 520 P.2d 104, 106 (1974); *see also City of Colorado Springs*, 967 P.2d at 1056 ("The particular purpose for which one seeks the public record is not relevant in determining whether disclosure is required . . . .").

¶ 15    Because "CORA's clear language creates a strong presumption in favor of disclosing records," a court must "construe any exceptions to CORA's disclosure requirements narrowly." *Jefferson Cnty. Educ. Ass'n v. Jefferson Cnty. Sch. Dist. R-1*, 2016 COA 10,

6

¶ 14, 378 P.3d 835, 838. The parties agree that the only potentially applicable CORA exception is the one referring to disclosures barred "by rules promulgated by the supreme court or by the order of any court." § 24-72-204(1)(c) (exception c). Archuleta interprets the reference to "rules promulgated by the supreme court" in exception c to mean the Colorado Rules of Civil Procedure and interprets "order of any court" to encompass supreme court precedent.

### 2. The Authorities on Which Archuleta Relies

#### a. The Colorado Supreme Court's Decisions in *Martinelli* and *City of Colorado Springs* and Related Authorities

¶ 16 Archuleta specifically argues that *Martinelli* and *City of Colorado Springs* hold that "open records laws cannot be used to supplant discovery practice in civil litigation," and that "the [d]istrict [c]ourt created a non-existent exception" to such precedent for cases subject to C.R.C.P. 16.1. We need not reach Archuleta's contention that "order of any court" in exception c means supreme court precedent because, regardless of the language of exception c, we must follow the supreme court's decisions. *See People v. Robson,* 80 P.3d 912, 914 (Colo. App. 2003) ("[W]e are bound by the

7

rule as expressed by the Colorado Supreme Court, and we are not free to depart from this precedent.").

¶ 17    We now turn to *Martinelli*. Contrary to Archuleta's argument, in that case, the supreme court held that the right to inspection of public records granted in CORA is distinct from, rather than mutually exclusive of, the right to obtain discovery set forth in the Rules of Civil Procedure. *See Martinelli*, 199 Colo. at 177, 612 P.2d at 1093.

¶ 18    The facts underlying *Martinelli* are critical to understanding the scope of the supreme court's statement that CORA was not intended to "supplant discovery practice in civil litigation." *Id. Martinelli* was an original proceeding in which the Denver Police Department and individual Denver police officers (the police petitioners) sought to block an individual respondent from using C.R.C.P. 34 to obtain personnel files and Staff Investigation Bureau reports (S.I.B. reports) in the individual's pending civil action against the police petitioners. *Id.* at 167-68, 612 P.2d at 1086-87. In that action, the individual alleged, among other things, that the individual officers had illegally arrested and assaulted him. *Id.* at 167, 612 P.2d at 1086. Significantly for purposes of this case, the

8

individual had not sought the subject documents through a CORA request.

¶ 19     So why did the supreme court address CORA in *Martinelli*? The police petitioners argued in their original proceedings that two of the exceptions from disclosure set forth in CORA barred the individual from obtaining the subject documents through discovery in the pending case. *Id.* at 176, 612 P.2d at 1093. Those CORA exceptions authorized public entities to deny public access to "personnel files" and certain records of criminal investigations if "disclosure would be contrary to the public interest." *Id.* at 176-77, 612 P.2d at 1093 (first citing § 24-72-204(3)(a)(II), C.R.S. 1973; and then citing § 24-72-305(5), C.R.S. 1978).

¶ 20     The police petitioners essentially argued that the exceptions to CORA not only apply to requests for public records under CORA but also to document requests in civil cases. *Id.* The supreme court rejected this theory: "[T]he legislature did not intend that the open records laws would supplant discovery practice in civil litigation." *Id.* at 177, 612 P.2d at 1093. The court explained that CORA is "directed toward 'regulation of the entirely different situation of the general exploration of public records by any citizen during general

business hours.'" *Id.* (quoting *Tigue v. City & Cnty. of Honolulu*, 520 P.2d 1345, 1348 (Haw. 1974)). The court concluded that the CORA exceptions on which the police petitioners relied did not, "ipso facto, exempt the personnel files and the S.I.B. reports from discovery in civil litigation." *Id.* at 177, 612 P.2d at 1094.

¶ 21    Thus, *Martinelli* stands for the proposition that CORA does not bar production of documents otherwise producible in civil litigation. It does not support Archuleta's contention that individuals litigating against public entities are precluded from obtaining documents from those entities through CORA during the pendency of the litigation.

¶ 22    *City of Colorado Springs* also does not support Archuleta's contention. That case involved the opposite situation from *Martinelli*: the plaintiff had submitted a CORA request to obtain a report relating to an internal evaluation of the Industrial Training Division of the Colorado Springs Community Services Department but was not litigating against the Department (other than in the case he filed under CORA). *City of Colorado Springs*, 967 P.2d at 1045. The custodian of the report argued that it was privileged from disclosure under the common law governmental deliberative

process privilege and, therefore, was subject to the CORA exception for "privileged information" contained in section 24-72-204(3)(a)(IV), C.R.S. 1998. *City of Colorado Springs*, 967 P.2d at 1045-46.

¶ 23 In *City of Colorado Springs*, the supreme court adopted the "deliberative process privilege," which bars public disclosure of communications between government officials when disclosure of the communications would deter the open exchange of opinions. *Id.* at 1047, 1050. The court held that the report fell within that privilege and was thus exempt from inspection under CORA. *Id.* at 1057-58.

¶ 24 Although, as Archuleta notes, the *City of Colorado Springs* court quoted the language in *Martinelli* stating that CORA is not intended to "supplant discovery practice in civil litigation," *id.* at 1055 (quoting *Martinelli*, 199 Colo. at 177, 612 P.2d at 1093), it did so in the context of explaining that CORA "incorporates," rather than "supplants," common law evidentiary privileges. *Id.* The court noted that, although CORA does not "refer to . . . common law privileges by name," it nonetheless "protect[s] material insulated by these privileges by general reference to discovery principles." *Id.*

11

¶ 25    Moreover, the *City of Colorado Springs* court articulated an

important distinction between the production of public records

through discovery in civil litigation and through CORA requests:

> In contrast to the discovery context, . . . *the
> need of the party requesting disclosure is not
> relevant to a request for public records.* The
> particular purpose for which one seeks the
> public record is not relevant in determining
> whether disclosure is required because the
> open records laws only require disclosure of
> materials which would be routinely disclosed
> in discovery.

*Id.* at 1056 (emphasis added) (citations omitted). Thus, Roane's

purpose in seeking the recording to support his position in the

declaratory judgment case "is not relevant in determining whether

disclosure is required" under CORA. *Id.*; *see also City of Fort Collins

v. Open Int'l, LLC*, No. 21-cv-02063-CNS-MEH, 2022 WL 7582436,

at *6 (D. Colo. Aug. 16, 2022) (unpublished opinion) ("[T]he Court is

. . . mindful that CORA provides a statutory right to request public

records, independent of the discovery procedures set forth in the

Federal Rules of Civil Procedure."). Accordingly, under *City of

Colorado Springs*, Archuleta must comply with the request without

regard to Roane's reason for seeking the recording.

¶ 26     Our analysis of the supreme court cases cited in Archuleta's opening brief would be incomplete without review of *People in Interest of A.A.T.*, 759 P.2d 853 (Colo. App. 1988), which relies in part on *Martinelli*.  Roane cites to *A.A.T.* in his answer brief and Archuleta addresses the case in her reply brief.

¶ 27     Although the division decided *A.A.T.* on jurisdictional grounds, like this case, it involved the litigants' attempt to use CORA to obtain documents relevant to a pending case.  *Id.* at 853-55.  In that case, intervenors in a proceeding for termination of parental rights submitted a CORA request for records, including documents concerning "[that] particular termination case," from the Arapahoe County Department of Social Services.  *Id.* at 854.  The Department denied the intervenors access to the documents on the grounds that the request "should be made pursuant to the 'rules of court procedure.'"  *Id.*  The intervenors responded that "their requests were not discovery requests, but were legitimate [CORA] requests . . . , regardless of [the intervenors'] status as parties to [the] case or of the relevancy of the documents to the action pending before the court."  *Id.*  The intervenors further asserted that the district court,

"in its role as tribunal for termination proceedings," lacked jurisdiction to rule on the validity of their CORA request. *Id.*

¶ 28 The district court disagreed, concluding that it could exercise jurisdiction over the intervenors' CORA request. *Id.* It ordered the Department to produce certain of the requested documents to the intervenors pursuant to CORA but held that the records concerning "[that] particular termination case" must be treated as "discovery requests under the Rules of Civil Procedure." *Id.* On appeal, the intervenors argued that the trial court in the termination case lacked subject matter jurisdiction to decide their right to obtain the requested documents through CORA. *Id.*

¶ 29 The division agreed with the intervenors, noting that CORA "does not expressly limit access to any records merely because a person is engaged in litigation with the public agency from which access to records is requested." *Id.*

¶ 30 The division first explained that the process for obtaining an expedited court ruling set forth in section 24-72-204(5) and (6), C.R.S. 1982, of CORA is "the exclusive method for obtaining a review of the accessibility of these records." *Id.* Next, the division noted that "the claim of entitlement to access to public records

14

under [CORA] presents issues distinct from the issue of the discoverability of possible evidence for use in litigation." *Id.* at 855. For these reasons, the division concluded that the trial court lacked subject matter jurisdiction to consider the Department's objections to the intervenors' CORA requests "in the context, and as part, of [that] juvenile court proceeding." *Id.* The division noted, however, that it was "express[ing] no view upon the substantive issue of the extent to which intervenors are entitled to any of the records" under CORA. *Id.*

¶ 31    The lack of an exception in CORA for pending litigation and the attorney fee provision of CORA, which *Martinelli*, *City of Colorado Springs*, and *A.A.T.* do not address, further confirm our determination that those cases support Roane's arguments. First, CORA does not contain an exception expressly barring an individual from obtaining public records from an entity against whom the individual is litigating. *See generally* § 24-72-204, C.R.S. 2022 (listing the grounds for allowance or denial of requests for inspection of public records under CORA). As we discuss below in Part II.B.4, case law from other states demonstrates that, absent such an express exception, a state's open records act does not bar a

litigant from employing the act to obtain documents from an adverse party that is a public entity.

¶ 32    Second, section 24-72-204(5)(b), which addresses awards of attorney fees in connection with CORA requests, envisions civil litigants' use of CORA.  Specifically, that provision mandates awards of "court costs and reasonable attorney fees to [a] prevailing applicant" whose CORA request was improperly denied, unless "the records being sought are related to . . . pending litigation" against a state or local public body and "are discoverable pursuant to . . . the Colorado rules of civil procedure."  § 24-72-204(5)(b).  Thus, CORA does not prevent a litigant from employing CORA to obtain public records for use in a pending suit against the producing entity — it only prevents that party from recovering attorney fees and costs if the party could also have obtained the subject documents through discovery.  This statutory language would be meaningless if a litigant could not employ CORA to obtain documents to support a pending civil suit against a public entity.

¶ 33    In light of the supreme court's decisions in *Martinelli* and *City of Colorado Springs,* the division's decision in *A.A.T.,* and the provisions of CORA noted above, we reject Archuleta's argument

16

that an individual litigating against a public entity is barred from employing CORA to obtain relevant documents from that entity.

¶ 34    Next, we consider the second type of authority on which Archuleta's assertion rests.

b.    Attorney General Formal Opinion No. 01-1

¶ 35    Archuleta asserts that a formal opinion of the Colorado Attorney General supports her interpretation of CORA.  Colo. Op. Att'y Gen. No. 01-1 (July 5, 2001).

¶ 36    As a general matter, written opinions by the Colorado Attorney General are not binding upon us.  *Justus v. State*, 2014 CO 75, ¶ 31 n.11, 336 P.3d 202, 211 n.11.  While the Attorney General's written opinions are "entitled to respectful consideration as a contemporaneous interpretation of the law by a government official charged with the responsibility of such interpretation," our resolution of an issue of statutory construction "must proceed from an independent analysis of the statutory scheme." *Colo. Common Cause v. Meyer*, 758 P.2d 153, 159 (Colo. 1988).

¶ 37    In any event, the Attorney General opinion supports our determination that CORA generally allows civil litigants to access public records from a public entity that is an adverse party.  The

17

Attorney General opinion acknowledges that "[t]here may be times when parties to a civil lawsuit can use the Open Records Act to obtain information concerning their lawsuit from governments in Colorado, whether or not the government involved is a party to the lawsuit." Colo. Op. Att'y Gen. No. 01-1 at 7 (citing to *A.A.T.*, 759 P.2d at 854).

¶ 38 The Attorney General opinion then points to a small number of situations in which a litigant is precluded from using CORA to obtain documents from an adverse party that is a public entity, such as when the request "violates a limit on discovery imposed by the court or under the rules of civil procedure or otherwise interferes with the judicial process." *Id.* (citing to exception c).

¶ 39 Because Roane did not seek to wield CORA to circumvent a limit on document requests (as noted above, he did not propound any discovery requests in the declaratory judgment case), Archuleta's argument regarding the possible use of CORA "to supplement or expand discovery in ongoing litigation" has no bearing on our analysis. Nothing in the Attorney General opinion supports Archuleta's argument.

18

¶ 40    Next, we analyze the third type of authority on which Archuleta's interpretation of CORA rests.

### c.    The United States Supreme Court FOIA Cases

¶ 41    Archuleta points to United States Supreme Court cases interpreting FOIA to support her argument regarding the interplay between the discovery rules and open records laws because Colorado courts have looked to analogous provisions of FOIA when interpreting CORA.  *See, e.g.*, *Wick Commc'ns Co. v. Montrose Cnty. Bd. of Cnty. Comm'rs*, 81 P.3d 360, 361 (Colo. 2003).  But those Supreme Court decisions concerned different facts and different issues from those presented here.

¶ 42    In particular, Archuleta directs us to the United States Supreme Court's statement in *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989), "that the FOIA was not intended to supplement or displace rules of discovery."  Archuleta, however, fails to provide the context of that language.

¶ 43    In *John Doe Agency*, the Supreme Court decided whether the FOIA exception for documents "compiled for law enforcement purposes" applies to documents that a federal agency compiled before the inception of the law enforcement investigation.  *Id.* at

148-49.  The Court held that the exception applied, even though a federal agency had initially compiled the documents for reasons unrelated to law enforcement, because the documents had later been recompiled for use in a law enforcement investigation at the time of the FOIA request.  *Id.* at 153-55.

¶ 44    The Court's statement "that the FOIA was not intended to supplement or displace rules of discovery" clarified that the right of a litigant to obtain documents through discovery does not determine whether those documents are also producible under FOIA.  *Id.* at 153.  The Court did not hold in *John Doe Agency* that a party in a civil case is barred from employing FOIA to obtain documents related to pending litigation against the agency to which the FOIA request is directed.

¶ 45    Even if, as Archuleta argues, CORA, like FOIA, "is fundamentally designed to inform the public about agency action and not to benefit private litigants," a party's rights under an open records act "are neither increased *nor decreased* by reason of the fact that [the party] claims an interest in [the subject record] greater than that shared by the average member of the public."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10 (1975) (emphasis

added).  Further, while "[d]iscovery for litigation purposes is not an expressly indicated purpose of [FOIA]," *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974), the Supreme Court made that statement in addressing whether a party to an administrative proceeding may obtain an injunction to enforce a FOIA request in the face of specific statutory language that precludes "interruption[s] for judicial review" before the party exhausts its administrative remedies.  *Id.* at 20-24.

¶ 46     In sum, the Supreme Court decisions that Archuleta cites do not stand for the position that a party may not employ an open records act request to obtain documents from a public entity against which the party is litigating.

¶ 47     We now turn to Archuleta's argument that the inspection order is inconsistent with public policy.

### 3.    Archuleta's Policy Argument

¶ 48     Archuleta warns that allowing civil litigants to use CORA for discovery purposes would "open the door to unlimited discovery against public entities subject to open records laws" and place "an excessive, undue and inequitable burden" on public entities.  For example, Archuleta points out that a public entity must allow

inspection of a record requested under CORA within three working days (presumptively, with possible extensions for "extenuating circumstances"), § 24-72-203(3)(b), while the public entity would have thirty-five days to respond to document requests propounded under C.R.C.P. 16.1(k)(4)(B). She also asserts that affirming the inspection order would throw "the limits on discovery set forth in C.R.C.P. 16.1(k)(4) and 26(b)(2) . . . out the proverbial window." We disagree based on the language of CORA.

¶ 49    Because our reading of CORA is consistent with the authorities discussed above, including the cases cited in Archuleta's opening brief, we perceive that her complaint is with CORA itself. Her challenge to the inspection order cannot be squared with the General Assembly's unambiguous declaration that "the public policy of this state [is] that *all public records* shall be open for inspection *by any person* at *reasonable times*, except as . . . specifically provided by law." § 24-72-201 (emphases added). We do not see how a requestor's status as a litigant would create a more "excessive, undue and inequitable burden" on an opposing party that is a public entity than the burden that CORA places on that entity when a nonlitigant seeks documents from the entity.

22

¶ 50    If Archuleta is indeed concerned about the burden that CORA imposes on public entities, her remedy is a petition to the General Assembly to amend CORA.  We are not at liberty to engraft an exception onto CORA that the General Assembly did not enact.  *See Sierra Club v. Billingsley*, 166 P.3d 309, 317 (Colo. App. 2007).  "Where the legislature could have chosen to restrict the application of a statute, but chose not to, we do not read additional restrictions into the statute."  *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 804 (Colo. 2000).  "And we will not second-guess the policy preferences of the legislature."  *Prairie Mountain Publ'g Co. v. Regents of Univ. of Colo.*, 2021 COA 26, ¶ 25, 491 P.3d 472, 477.

¶ 51    We further note that Archuleta's argument would lead to the absurd situation in which a litigant seeking documents from a party-opponent under CORA would need to dismiss his or her pending action against the public entity without prejudice, submit a CORA request, and then refile the action after obtaining the requested documents.  We must avoid interpreting CORA in a way that would lead to an absurd result.  *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011).

## 4. Analogous Authorities from Other Jurisdictions

¶ 52 We now turn to analogous cases from other jurisdictions that have addressed the very issue presented here. Courts in other states have allowed an individual to obtain documents from a public entity under the state's open records act even if the individual sought the documents in connection with pending litigation against the public entity, with one notable exception — where the act contained an explicit "pending litigation" exception. *See, e.g., Kentner v. Ind. Pub. Emps.' Plan, Inc.*, 852 N.E.2d 565, 575 (Ind. Ct. App. 2006) (concluding that a plaintiff's right to obtain documents under the Indiana Access to Public Records Act is "unaffected by his intended use of those documents and his alleged abuse of the . . . discovery process"); *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 361 (Tenn. 2008) ("A growing number of courts, construing public records statutes similar to ours, have decided that persons should not be denied access to public records solely because they are involved, or may be involved, in litigation with a governmental entity."); *Stevens v. Lemmie*, 40 Va. Cir. 499, 1996 WL 33472511, at *11 (Dec. 10, 1996) ("This Court finds no exception to [the Virginia FOIA] that

24

precludes its use where the information sought may become evidence in a pending or contemplated civil action.").

¶ 53     The evolution of Michigan's open records act is instructive. In 1997, the Michigan Court of Appeals held that a plaintiff who had filed suit against a public entity could use Michigan's version of FOIA to obtain documents pertaining to the suit. *See Cent. Mich. Univ. Supervisory-Tech. Ass'n, MEA/NEA v. Bd. of Trs. of Cent. Mich. Univ.*, 567 N.W.2d 696, 697 (Mich. Ct. App. 1997). The court determined that the use of a FOIA request under such circumstances would be lawful, detecting no "conflict between the court rules and the [Michigan] FOIA." *Id.* The court reasoned that "[t]he fact that discovery is available as a result of pending litigation between the parties does not exempt a public body from complying with the public records law." *Id.* Accordingly, the court refused "to read into the FOIA the restriction that, once litigation commences, a party forfeits the right available to all other members of the public and is confined to discovery available in accordance with court rule." *Id.*

¶ 54     In response to this decision, the Michigan legislature amended its state's version of FOIA to add an exception for "[r]ecords or

25

information relating to a civil action in which the requesting party and the public body are parties." Mich. Comp. Laws Ann. § 15.243(1)(v) (West 2022); *see Seyler v. City of Troy*, No. 297573, 2011 WL 5374990, at *3 (Mich. Ct. App. Nov. 8, 2011) (unpublished opinion).

¶ 55 Vermont's open records statute similarly explicitly bars public access to "[r]ecords that are relevant to litigation to which the public agency is a party of record, provided all such matters shall be available to the public after ruled discoverable by the court before which the litigation is pending, but in any event upon final termination of the litigation." Vt. Stat. Ann. tit. 1, § 317(c)(14), (West 2022).

¶ 56 We are unaware of any case, from any jurisdiction lacking a "pending litigation" exception, holding that a public entity litigating against an individual is not required to respond to that individual's open records act request while the litigation remains pending.

¶ 57 The Colorado General Assembly could have enacted a "pending litigation" exception — like the exceptions adopted in Michigan and Vermont — to bar litigants in pending cases against public entities from obtaining documents relevant to the litigation from the public

26

entity through a CORA request.  But it did not do so.  Accordingly, if Archuleta wishes to engraft a "pending litigation" exception onto CORA, she must do so by petitioning her state legislators.  *See Springer,* 13 P.3d at 804; *Sierra Club,* 166 P.3d at 317.

¶ 58    In sum, our reading of CORA is in harmony with other states' interpretations of their open records laws in cases involving facts similar to those presented here.

### C.    The District Court Correctly Ordered Archuleta to Provide the Requested Record to Roane

¶ 59    We now turn to our review of whether CORA permits Roane's inspection of the documents in his request.

¶ 60    As explained above, Archuleta denied Roane's request under exception c, stating that inspection was "prohibited by rules promulgated by the supreme court or by the order of any court." § 24-72-204(1)(c).  She asserted that the request was "prohibited by the Supreme Court's order" in *Martinelli* and that it was further prohibited by the Rules of Civil Procedure that "set[] forth the requirements for any request for production of documents and things."

¶ 61    Having already dispensed with Archuleta's *Martinelli* argument, we are left with the issue of whether the request violated any "rules promulgated by the supreme court" — the Colorado Rules of Civil Procedure.  *See Martinelli,* 199 Colo. at 176-77, 612 P.2d at 1093 (construing the "rules promulgated by the supreme court" as a reference to the rules of civil procedure).  We disagree that the inspection order violates the Rules of Civil Procedure applicable to document requests.

¶ 62    Even if we were to determine that a CORA request would count as a request for production of documents, we do not find any Rule of Civil Procedure that bars the request.  Under the simplified procedural rules that governed the underlying case, Roane was entitled to propound five requests for production of documents.  C.R.C.P. 16.1(k)(4)(B).  Even if we assume that the request was a request for production of documents under C.R.C.P. 16.1(k)(4)(B), which we are not deciding, Roane did not exceed the five-request limit.

¶ 63    Further, although Archuleta denied the request as not comporting with the discovery rules, as explained above, Roane was entitled to use CORA, as a distinct procedure from the production

28

of documents as part of discovery, to request the record. *See Martinelli*, 199 Colo. at 177, 612 P.2d at 1093. We find no language in Rule 34 that prohibits Roane's CORA request. Because Archuleta points to no other rules that prohibit Roane's inspection, we agree with the district court that Archuleta was required to grant the request.

### III. Conclusion

¶ 64    The inspection order is affirmed.

JUDGE FOX and JUDGE FREYRE concur.