The **FIRE HOUSE CAR WASH, INC., a Colorado corporation; William Kuntzler, its President; Rak Investments, Inc., a Colorado corporation; and Richard A. Kates, its President, Plaintiffs–Appellants and Cross–Appellees,**

v.

**BOARD OF ADJUSTMENT FOR ZONING APPEALS, CITY AND COUNTY OF DENVER; Virginia A. Martinez, Kevin Malloy, Susan Sanders, Sharron Frank Klein, and Ike Kelley, solely in their official capacities as members of**

the Board of Adjustment; The Department of Zoning Administration, City and County of Denver; Kent Strapko, solely in his official capacity as Zoning Administrator; and The City and County of Denver, a municipal corporation, Defendants–Appellees and Cross–Appellants,

and

The Alamo Placita Neighbors Association; James N. Kayser, Yvonne E. Kayser, Mark J. Naylor, Christine Mary Naylor, and Joseph Halpern, Intervenors–Defendants–Appellees.

No. 99CA1652.

Colorado Court of Appeals, Div. V.

Jan. 4, 2001.

Rehearing Denied Feb. 1, 2001.

Certiorari Denied Sept. 10, 2001.*

* Justice COATS does not participate.

Justice KOURLIS would grant as to the following issue: Whether the court of appeals' decision conflicts with this court's decisions which have held that legislatively-prescribed definitions are binding on administrative agencies and courts.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Thomas J. Ragonetti, J. Thomas Macdonald, Munsey L. Ayers, Jr., Powers Phillips, P.C., Tamara K. Vincelette, Denver, CO, for Plaintiffs–Appellants and Cross–Appellees.

J. Wallace Wortham, Jr., City Attorney, Thomas Bigler, Assistant City Attorney, Denver, CO, for Defendants–Appellees and Cross–Appellants.

Daniel C. Himelspach, Denver, CO, for Intervenors–Defendants–Appellees Alamo Placita Neighbors Association, James N. Kayser, Yvonne E. Kayser, Mark J. Naylor, and Christine Mary Naylor.

Joseph W. Halpern, Pro Se.

Opinion by Judge ROY.

In this appeal, The Firehouse Car Wash, Inc., and William Kuntzler, its president (collectively business owner); and RAK Investments, Inc., and Richard A. Kates, its president (collectively property owner), appeal the judgment of the trial court affirming the administrative decision and action of the Board of Adjustment for Zoning Appeals of the City and County of Denver (the Board) revoking a non-conforming use. The board members, the Department of Zoning Administration and its administrator, and the City and County of Denver (collectively Denver) cross-appeal the order of the trial court effectively denying its costs incurred in the preparation of the record on appeal. We affirm and remand for an award of costs.

During the administrative proceeding, the Board permitted The Alamo Placita Neighbors Association and some of its individual members (collectively neighbors) to intervene. In this appeal, neighbors are aligned with Denver.

The facts are essentially undisputed. Business owner operates a multifaceted business that includes a car wash, gasoline station, retail area, and detail shop, located in a primarily residential area of central Denver. The car wash is a non-conforming use. The business was acquired by business owner in 1997 from property owner, who retained ownership of the real property.

The car wash has been in existence since 1966, when property owner obtained a permit to operate a coin-operated car wash as a non-conforming use. In the intervening years, the business has expanded to include more land, equipment, and services. Property owner purchased adjacent properties and demolished residences to facilitate this growth.

The business operates on two lots zoned B–2, and it is asserted that it has expanded onto a lot zoned R–2. As pertinent here, B–2 zoning permits, as a use by right, the operation of a service, or gasoline filling, station with some limitations; and an auto polishing business with the restriction that any vehicle washing be limited to those vehicles which are polished. R–2 zoning permits residential uses only.

The business occupies the B–2 zoned parcels, which constitute the north end of a city block bounded on the north by Sixth Avenue, on the west by Ogden Street, and on the east by Corona Street, and which are divided by a north-south public alley. On the west half of the block there is a gasoline station and a residence which has been converted to an office building. The gasoline station is an island station, that is, the pumps and booth both occupy an island. There is no indication in this record how much gasoline sales contribute to the business.

The car wash is located in a large brick building on the northeast corner of the block. The car wash occupies the northerly 40%, the retail sales and customer waiting area occupy the middle 20%, and a detail shop occupies the southerly 40% of the building.

The space occupied by the gasoline station is frequently used to line up vehicles for the car wash. The vehicles are lined up, sometimes three abreast, and are fed into the single lane car wash. The drying and wiping operations sometimes encroach on the public sidewalk, and onto Corona Street to the east and, during busy periods, vehicles awaiting the car wash encroach on Ogden Street to the west.

The vehicles are operated by car wash employees for entry into the car wash and until they are returned to the customers after drying on the east side of the building.

The car wash can process 1.5 vehicles a minute, and the business owner testified that it washes 175,000 vehicles a year.

Shortly after acquiring the business, business owner installed an automated automobile polishing machine in the portion of the building occupied by the automobile detail shop. The automated polishing service is offered to all the car wash customers. If a customer accepts this service, a car wash employee drives the vehicle from the drying area, around the block or up the public alley, into the detail shop, into and out of the polishing machine, and the vehicle is then returned to the owner following the polishing. The customer pays one bill. Virtually all of the vehicles which are polished are also washed in the car wash. However, the polishing machine serves less than 5% of the 175,000 cars washed each year. It is undisputed that business owner installed the polishing machine without consulting, or seeking a use permit from, Denver.

The R–2 parcel is located south of, and immediately adjacent to, the car wash building. It has been landscaped as a park with a concrete apron on the east end and an employee parking area on the west end. The parcel has been used to store empty containers that originally contained chemicals used in the car wash pending disposal. In addition, a small shed used to store car wash equipment and trash, a small area for drying sludge from the car wash, and a trailer used to haul the dried sludge to the landfill, are all located, used, or stored on the R–2 parcel. The concrete apron on the east side of the parcel is, on occasion, used for drying or storing vehicles from the car wash operation. Applications to rezone this parcel for car wash expansion and use have been denied by Denver.

Denver issued two cease and desist orders, the first on July 17, 1997, prompted by business owner's installation of the polishing machine, and the second issued on January 28, 1998, prompted by business owner's use of the R–2 parcel. Business owner appealed the orders to the Board, which upheld them after an extended hearing.

Owners then sought review of the Board's decision to the district court pursuant to

C.R.C.P. 106(a)(4), claiming that the Board exceeded its jurisdiction and abused its discretion. Before the district court, they asserted, as they do in this appeal, that the applicable ordinances do not authorize termination of the non-conforming use as a remedy for the cited and proved violations. Instead, relying in part on *Anderson v. Board of Adjustment for Zoning Appeals*, 931 P.2d 517 (Colo.App.1996), they argued that Denver is first required to issue an order giving business owner an opportunity to bring its operations into compliance.

Owners also sought declaratory and injunctive relief pursuant to C.R.C.P. 57 and 65, on a number of grounds, including, as relevant here, an assertion that Denver Revised Municipal Code (D.R.M.C.) 59–631(b) is unconstitutional as applied as it constitutes an impermissible delegation of legislative power, is void for vagueness, and violates their procedural due process rights.

The parties filed cross-motions for summary judgment. The trial court made detailed findings of fact, conclusions of law, and issued an order granting Denver's motion for summary judgment on owners' C.R.C.P. 106, 57, and 65 claims. The trial court dismissed owners' remaining claims.

## I.

■ At the outset, we address our standard of review with respect to C.R.C.P. 106(a)(4) proceedings. The review of a quasi-judicial action by an administrative agency is an appellate review limited to the record made before the administrative agency. The agency's findings of fact are binding on the court if supported by competent evidence. *See Fueston v. City of Colorado Springs*, 713 P.2d 1323 (Colo.App.1985). The standard of review in both the trial court and this court is whether the Board abused its discretion or exceeded its jurisdiction. *City of Colorado Springs v. Givan*, 897 P.2d 753 (Colo.1995). In addition, the interpretation of a rule by the agency charged with its enforcement is entitled to great deference. *Regents of University of Colorado v. City & County of Denver*, 929 P.2d 58 (Colo.App.1996).

Here, the parties both filed motions for summary judgment as to both the C.R.C.P. 106 appellate review and the C.R.C.P. 57 claims for declaratory judgment. The trial court granted Denver's motion.

Summary judgment is a drastic remedy and should only be granted if there is a clear showing that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. The non-moving party is entitled to all favorable inferences that may be drawn from the undisputed facts, and all doubts as to whether a triable issue of fact exists must be resolved against the moving party. *See Compass Insurance Co. v. City of Littleton*, 984 P.2d 606 (Colo.1999).

■ We conclude that our review of the C.R.C.P. 106(a)(4) claims is a direct review of the action taken by the Board and is governed by Rule 106 and the case law construing and applying this rule. Our review of the trial court's grant of summary judgment on the C.R.C.P. 57 declaratory judgment claim is de novo. *See Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995).

## II.

■ Owners assert that there was neither evidence nor jurisdiction to support the Board's termination of the non-conforming use. We disagree.

■ Continued non-conforming uses are disfavored because they reduce the effectiveness of zoning ordinances, depress property values, and contribute to urban blight. *Hartley v. City of Colorado Springs*, 764 P.2d 1216 (Colo.1988). Zoning ordinances allowing indefinite continuation of a non-conforming use are to be strictly construed, and those restricting non-conforming uses are to be liberally construed. Additionally, non-conforming uses should be reduced to conforming uses as speedily as possible. *Anderson v. Board of Adjustment for Zoning Appeals, supra.*

D.R.M.C. 59–631 provides, in pertinent part, as follows:

(a) *Definition.*

(1) A nonconforming use shall be any use which:

. . . .

b. On or after November 8, 1956, was lawfully operated in accordance with the provisions of this chapter, but which use, by reason of amendment to this chapter, is not a use by right in the district in which the use is located;

. . . .

(b) *Continuance of nonconforming uses.* Upon performance of and compliance with the following conditions and requirements and subject to the provisions relating to termination hereinafter set forth, *any nonconforming use may be continued in operation on the same land area and on the same floor area in a structure which was occupied by the nonconforming use on the date the use first became a nonconforming use and the land area and the floor area in a structure shall not be increased.* Unless a nonconforming use is changed as hereinafter permitted, the continuance authorized hereunder shall not be construed to permit . . . *any change whatsoever in any aspect of and feature of or in the character of the nonconforming use.*

. . . .

(d) *Termination of nonconforming uses:*

. . . .

(2) *By violation of chapter.* Any one (1) of the following violations of this chapter shall terminate immediately the right to operate a nonconforming use:

. . . .

c. *Increasing the floor area occupied by a nonconforming use without the approval of the board of adjustment for such increase* . . . . (emphasis added)

This ordinance contemplates that when there is a non-conforming use located on part of a zone lot, the portion of the zone lot actually used and occupied by the non-conforming use may continue to be so used and occupied so long as there is compliance with the ordinances governing continuing non-conforming uses. This portion of the zoned lot becomes, for all practical purposes, an internal zone lot. D.R.M.C. 59–631(b)(2). Expansion of the non-conforming use beyond the boundaries of the internal zone lot violates D.R.M.C. 631(d)(2)(c).

The first cease and desist order, which was prompted in large measure by the installation of the polishing machine, cites to violations of D.R.M.C. 59–631(b), 59–631(b)(2), and 59–631(d)(2), and concludes by stating:

A non-conforming car wash on the referenced zone lot has added new equipment, changing an aspect of and feature of its operation; washed vehicles are wiped dry beyond the boundaries of the zone lot, thereby blocking the adjacent public right of way; and a public address system is audible beyond the boundaries of the zone lot. The non-conforming use is hereby terminated, for the above violations of cited sections.

The second cease and desist order, which was prompted by the perceived encroachment of car wash uses on the adjacent R–2 parcel again cites to violations of D.R.M.C. 59–631(b), 59–631(b)(2), and 59–631(d)(2), and concludes by stating:

A non-conforming car wash on the referenced zone lot has added new equipment, changing an aspect of and feature of its operation; washed vehicles are wiped dry beyond the boundaries of the zone lot, thereby blocking the adjacent public right of way; a public address system is audible beyond the boundaries of the zone lot; sludge by-products from the car wash are dumped and stored on the adjacent R–2 zone lot; supplies and materials for the car wash are stored on the adjacent R–2 zone lot; and vehicles (including a trailer) are parked on the adjacent zone lot. The non-conforming use is hereby terminated, for the above violations of cited sections.

The Board conducted an extended hearing and issued lengthy findings of fact and conclusions. However, the bulk of these findings are a recitation and summarization of the positions taken by the parties to the proceedings, and the facts or arguments

upon which each relied. At the close, however, the Board stated:

The Board concludes that the orders are found to be valid and are sustained. *The Board finds that the nonconforming use has indeed expanded off the zone lot in violation of the Code.* There are no proven errors and no grounds upon which to overturn the Administrator. However, a stay is in order because the Appellant [owner] has indicated that he wishes to pursue rezoning on the site. (emphasis added)

The Board then took the following action:

The request for Administrative Review is **DENIED.** The order is found to be valid and is sustained. *The Appellants (owners) failed to prove that the Zoning Administrator was in error when he determined that the nonconforming use had expanded off the zone lot. . . .*

■ Those findings and conclusions are adequate for our review. While more detailed findings of fact and conclusions of law are preferable on appeal, the absence of express findings by a lay board does not affect the validity of the decision when the necessary findings are implicit in the action taken. *Hudspeth v. County Commissioners,* 667 P.2d 775 (Colo.App.1983).

Owners argue that the zoning ordinance regulates uses, not businesses. They further argue that, while there is one business on the site, there are four separate and distinct operations—a car wash, a gasoline station, a detail shop, and a retail store—and each is to be compartmentalized and treated separately for zoning purposes. While the owners recognize the car wash is a non-conforming use, they assert that so long as it remains confined to its original space, no violation occurs.

Owners' argument on appeal is that the Board exceeded its jurisdiction by terminating the non-conforming use without proof of a violation of D.R.M.C. 59–631(d). Owners argue further that, at best, the evidence proved a violation of D.R.M.C. 59–631(b) for which the remedy is limited to an order requiring owners to rectify any violations and come into compliance.

More particularly, owners argue that encroachment onto the R–2 parcel violates the zoning ordinance as to the uses for that property, and that Denver's remedies are limited to enforcing the R–2 zoning. In making this argument, owners rely, in part, on *Anderson v. Board of Adjustment for Zoning Appeals, supra.* However, *Anderson* does not stand for the proposition that termination of the non-conforming use was not a possible or appropriate remedy when the use is impermissibly expanded.

The undisputed facts concerning the installation and use of the car polishing machine could lead to a reasonable inference and conclusion that the car polishing machine is a part of the non-conforming car wash use and constitutes an increase in the floor area occupied by that use in violation of D.R.M.C. 59–631(d). Immediate termination of the non-conforming use is a specified remedy for such a violation. Having so concluded, we need not address the scope and enforcement implications of D.R.M.C. 59–631(b).

■ While the Board expressly concluded that the non-conforming use expanded *off* the zone lot, but did not expressly conclude that the non-conforming use had impermissibly expanded *within* the zone lot, it sustained both cease and desist orders. The Board's lack of specificity is not fatal. *See Hudspeth v. County Commissioners, supra.*

Therefore, we reject owner's contention that there was neither evidence to support nor authority for the Board's termination of the non-conforming use. Having so held, we need not address the owners' arguments that D.M.R.C. 59–631(b) is unconstitutional.

### III.

■ On cross-appeal, Denver argues that the trial court erred in denying any award of costs for preparation of the record on appeal. We agree.

At the commencement of this action, owners filed a motion for certification of the record pursuant to C.R.C.P. 106(a)(4)(III). This rule states that the plaintiff shall pay in advance all costs for the preparation of the record on appeal. Denver calculated its costs to be $11,785.50, and requested that owners pay that amount. In response, owners filed a motion for a review and reduction

of the costs. The trial court granted owners' motion and, apparently, denied any award of costs, advanced or otherwise.

C.R.C.P. 106(a)(4)(IV) states, in relevant part:

> The costs of preparing the record shall be advanced by the plaintiff, except that the court may, on objection by the plaintiff, order a defendant to advance payment for the costs of preparing such portion of the record designated by the defendant as the court shall determine is unessential to a complete understanding of the controversy.

Thus, the costs for the preparation of the record on appeal must be advanced by the plaintiff. Inherent in the rule is the proposition that the costs must be reasonable. The only issue to be addressed by the trial court is the reasonableness of the costs, and, indeed, that was all that was challenged by owners here.

It is apparent from the tone of the order that the trial court considered some or most of the costs to be unreasonable. Based on that finding, the trial court denied any award of costs. That was, in our view, error.

The judgment is affirmed, and the cause is remanded to the trial court for a determination and award of the reasonable costs for the preparation of the record on appeal.

Judge RULAND and Judge NIETO concur