**Kenneth SHUPE and Darla Shupe, Plaintiffs–Appellees,**

v.

**BOULDER COUNTY, State of Colorado; Board of Adjustment of Boulder County, State of Colorado; Land Use Department of Boulder County, State of Colorado; Graham Billingsley, in his official capacity as Director of the Land Use Department of Boulder County, State of Colorado, Defendants–Appellants.**

No. 09CA0571.

Colorado Court of Appeals, Div. V.

March 18, 2010.

Johnson & Repucci, LLP, Lew M. Harstead, Boulder, Colorado, for Plaintiffs–Appellees.

H. Lawrence Hoyt, Boulder County Attorney, Patricia Mayne, Deputy Boulder County Attorney, Boulder, Colorado, for Defendants–Appellants.

Opinion by Judge LICHTENSTEIN.

Defendant, Board of Adjustment of Boulder County (BOA), appeals the district court's judgment reversing the BOA's determination that the principal use of property of plaintiffs, Kenneth and Darla Shupe, was residential rather than agricultural. We affirm the district court's judgment and conclude the principal use of the Shupes' property cannot be deemed residential use under the Boulder County Land Use Code (the code).

## I. Background

The Shupes own and reside on approximately 4.8 acres of land in Boulder County, in a zoned agricultural district. The Shupes' home, a barn, a driveway, three-quarters of an acre of hay production, small gardens, a pond, and a grazing area are located on the property.

For several years, the Shupes used the barn on the property to host weddings and other special events. The Shupes replaced this structure and continued to use the new barn to host special events. However, in 2006, the Boulder County Land Use Department issued a cease and desist letter to the Shupes, asserting such use of the property was not authorized without a proper permit.

The Shupes filed an application for special use review with the land use department, seeking a permit to host special events in the barn. The department refused to process the application without a determination as to the principal use of the property.

The Shupes submitted a request to the director of the land use department seeking a determination that the principal use of the property was agricultural, because under an agricultural use determination, the department could accept the Shupes' application for special use review. The director concluded he was unable to find the principal use was agricultural under the code's definition of "principal use." The director instead concluded the principal use of the property was residential because "[t]he primary purpose of this parcel is a residential use with Open Agriculture as an Accessory Use." Consequently, the Shupes were not able to apply for special use review.

The Shupes appealed the director's determination to the BOA. After an evidentiary hearing, the BOA voted unanimously to uphold the director's determination that the principal use of the property was residential rather than agricultural.

The Shupes filed a C.R.C.P. 106(a)(4) complaint in district court against, as relevant here, the BOA. The district court reversed the BOA's decision, concluding there was sufficient evidentiary support for the BOA's factual findings, but the BOA "unreasonably

misapplied the law by failing to apply" article 4–502(E)(5)(c) of the code. The district court subsequently denied the BOA's motion for reconsideration.

The BOA now appeals the district court's judgment.

## II. Standards of Review

■ In an appeal of a C.R.C.P. 106(a)(4) proceeding, the appellate court is in the same position as the district court concerning review of an administrative board's decision. *Ad Two, Inc. v. City & County of Denver,* 9 P.3d 373, 376 (Colo.2000); *Sierra Club v. Billingsley,* 166 P.3d 309 (Colo.App.2007). Review is limited to a determination of whether the board has exceeded its jurisdiction or abused its discretion. C.R.C.P. 106(a)(4)(I); *Fire House Car Wash, Inc. v. Bd. of Adjustment for Zoning Appeals,* 30 P.3d 762, 766 (Colo.App.2001).

■ In determining whether the board abused its discretion, the reviewing court may consider whether the board misinterpreted or misapplied the governing law. *Alward v. Golder,* 148 P.3d 424, 428 (Colo.App. 2006); *Droste v. Bd. of County Comm'rs,* 85 P.3d 585, 590 (Colo.App.2003).

■ Land use codes and ordinances "are subject to the general canons of statutory interpretation." *City of Colorado Springs v. Securcare Self Storage, Inc.,* 10 P.3d 1244, 1248–49 (Colo.2000).

■ When construing a land use code, courts look first to the plain language, being mindful of the principle that courts presume that the governing body enacting the code meant what it clearly said. *Id.; see also Sierra Club,* 166 P.3d at 312. If the code's language is ambiguous, we give deference to the board's interpretation of the code it is charged with enforcing, and its interpretation will stand if it has a reasonable basis in law and is warranted by the record. *See Sierra Club,* 166 P.3d at 312 (citing *Rivera–Bottzeck v. Ortiz,* 134 P.3d 517, 521 (Colo.App.2006)). However, if the board's interpretation is inconsistent with the governing relevant articles, then that interpretation is not entitled to deference. *Regents of University of Colo-*

*rado v. City & County of Denver,* 929 P.2d 58, 61 (Colo.App.1996).

## III. Discussion

The issue in this case is whether the code allows the BOA to uphold the director's determination that residential use is the principal use of the Shupes' property, in light of the plain language of article 4–502(E)(5)(c), where, as here, the property was in a zoned agricultural district and featured open agricultural uses, and the residential use consisted of a single-family dwelling. Article 4–502(E)(5)(c) of the code states that once a parcel is determined to feature open agricultural uses, "[o]ne single family dwelling, occupied by the owner or manager of the farm, will be considered customary and incidental as a part of this use."

The BOA asserts that the code allows it to uphold the director's determination that the principal use of the property is residential use. In support of this argument the BOA contends that (1) the district court, in reversing the BOA's decision, failed to give proper deference under C.R.C.P. 106(a)(4) to the BOA's interpretation of the code, (2) the BOA properly upheld the director's interpretation of the code, and (3) the evidence before the BOA supported its decision to uphold the director's determination.

■ With regard to the BOA's first contention, we do not review the propriety of the district court's orders; rather, we review the propriety of the BOA's decision. *See* C.R.C.P. 106(a)(4)(I); *Ad Two, Inc.,* 9 P.3d at 376.

As to the BOA's second contention, we conclude that the code is not ambiguous regarding this issue. Therefore, we must examine the plain language of the code to determine whether it permits residential use as the principal use of the Shupes' property.

The code contains several articles pertinent to this determination. First, article 4 of the code sets forth regulations for land use in various zoning districts. In article 4, the code lists several types of property uses, including, as relevant here, residential use and agricultural use. *See* Code arts. 4–502 & 4–511. The code generally recognizes that

these property uses may be either a principal use or an accessory use. *See* Code arts. 4–102(B) & 4–516.

A "principal use" is defined as "[t]he primary purpose or function for which a parcel is used." *See* Code art. 18–186.

An "accessory use" is defined as a use that is "customarily incidental to and on the same parcel as the main use." *See* Code art. 4–516. In this "accessory uses" article, the code provides that "if the director [of the land use department] determines that the [property] use is customarily incidental to a main use," it "may be an accessory use." *See id.*

In a district zoned as agricultural, the code allows for certain enumerated property uses to constitute the principal use of property. Among them are residential use consisting of a single-family dwelling and agricultural use. *See* Code art. 4–102(B)(2)(e), (11)(a). Pertinent here, agricultural use includes open agricultural uses, which consist of grazing, keeping of livestock, or the production of agricultural or horticultural products, and accessory storage. *See* Code art. 4–502(E)(1).

■ Thus, the director generally has discretion to determine whether residential use or agricultural use on a parcel constitutes a principal use or an accessory use on that parcel.

However, article 4–502(E)(5)(c) of the code limits this discretion. This provision states that once a parcel is determined to feature open agricultural uses, a single family dwelling, occupied by the owner, *"will be* considered customary and incidental as a part of this use." (emphasis added).

■ The term "will be" in article 4–502(E)(5)(c) is not defined in the code. Under article 1–1000(A)(1), the code's words and phrases are to be defined by common usage. The term "will" is "used to express a command, exhortation, or injunction." *Webster's Third New International Dictionary* 2617 (2002). Generally, statutory and contractual provisions that include the term "will" are mandatory. *See Plains Metropolitan Dist. v. Ken–Caryl Ranch Metropolitan Dist.,* —— P.3d ——, ——, 2010 WL 963459 (Colo.App. No. 09CA0425, March 18, 2010). According-

ly, the term "will be" in article 4–502(E)(5)(c) is mandatory in nature, requiring a determination that one single-family dwelling is customary and incidental to open agricultural uses.

■ Accordingly, under the code, when open agricultural use is found by the director or the BOA to be featured on a parcel, and the residential use of that parcel consists of a single-family dwelling, the residential use must be deemed a customary and incidental use to the open agricultural use and therefore may not be deemed a principal use.

Here, the BOA upheld the director's determination that "[t]he primary purpose of this parcel is a residential use with Open Agriculture as an Accessory Use." However, we conclude this determination is not consistent with the plain language of the code, and accordingly, we do not defer to the director's and BOA's interpretation of the code. *See Regents of University of Colorado,* 929 P.2d at 61.

■ Because article 4–502(E)(5)(c) mandates the determination that "one single family dwelling" is customary and incidental to open agricultural uses, so long as the record before the BOA supports the determination that open agriculture was a use on the property and the residential use of the property consisted of a single-family dwelling, the residential use on the Shupes' property *cannot* be deemed to be the principal use of the property.

Here, when the BOA upheld the director's determination, it made two relevant factual findings: that open agriculture use was present on the property and that residential use was present on the property. We will uphold these factual findings so long as there is competent evidence in the record to support them. *See City & County of Denver v. Board of Adjustment,* 55 P.3d 252, 254 (Colo. App.2002).

First, there is sufficient evidence in the record to support the finding that there is open agriculture under article 4–502(E) on the property. The Shupes used three-quarters of an acre on the property to grow and harvest hay, a pond stocked with fish is

located on the property, and four acres of the property are irrigated. Such uses fall within article 4–502(E)'s definition of "open agricultural uses."

Second, sufficient evidence in the record supports the finding that there is residential use on the property, consisting of one single-family dwelling as defined in article 4–511(D). Article 4–511(D) defines "residential use" that is a single-family dwelling as "[a] detached building which is occupied or which is arranged, designed, and intended to be occupied, by not more than one family, and which contains not more than one dwelling unit." Here, there is no dispute that the Shupes' residential use of the property consisted of a single-family dwelling. The director specifically stated in his letter of recommendation to the BOA that the uses currently on the Shupes' parcel include a single-family residence. To the extent the director determined that seventy-five percent of the property was used for varying purposes that were not agricultural, he did not attribute a percentage of use with regard to the single-family dwelling.

Because the BOA's factual findings are supported in the record, once the director found open agriculture to be present on the property, article 4–502(E)(5)(c) mandated that the Shupes' residential use, consisting of a single-family dwelling, be considered customary and incidental to the open agricultural uses present on the property. Accordingly, the BOA abused its discretion by adopting the director's determination that the principal use of the property is residential use, because the director and the BOA misapplied the plain language of the code.

We reject the BOA's contention that the applicability of article 4–502(E)(5)(c) was not an issue presented to the BOA in the Shupes' appeal, and that accordingly we may not apply it here. Both the director and the Shupes specifically cited article 4–502(E)(5)(c) in their respective letters to the BOA regarding the appeal. Further, the term "open agricultural use" was used throughout the appeal hearing before the BOA, indicating the applicability of article 4–502(E). Accordingly, the applicability of article 4–502(E)(5)(c) is properly before this court.

Finally, because we find the BOA abused its discretion, we need not address the parties' remaining contentions.

The judgment is affirmed.

Judge GRAHAM concurs.

Judge RUSSEL dissents.

Judge RUSSEL dissenting.

This case turns on the meaning of one sentence in the Boulder County Land Use Code. The sentence, which appears in a provision defining "open agricultural uses," is this: "One single family dwelling, occupied by the owner or manager of the farm, will be considered customary and incidental as a part of this use." Code art. 4–502(E)(5)(c).

The majority's opinion is premised on the view that this sentence applies whenever "a parcel is determined to feature open agricultural uses." I respectfully disagree with this view for structural, textual, and practical reasons.

### 1. *Structure*

In Boulder County, the Director of the Land Use Department has authority to "administer and enforce all provisions of the Land Use Code." Code art. 2–300(B). This grant of authority includes the power to determine whether, on a given property, a particular use is "accessory" or "principal," as those terms are defined in articles 4–516 and 18–186.

Under the majority's view, article 4–502(E)(5)(c) implicitly bypasses the director's inquiry into whether an open agricultural use is accessory or principal. But I doubt that subsection (5)(c) was intended to foreclose that inquiry. I think that, if the drafters had intended to limit the director's authority on such a basic question, they would have said so expressly, instead of placing an implicit limitation in the corner of a definitional provision.

I therefore do not view subsection (5)(c) as an implicit bar on the director's authority to determine that a particular property is prin-

cipally residential. I rather think that (5)(c) applies only after the director has determined that the property is principally used for open agriculture.

### 2. *Text*

I admit that the drafters did not expressly limit subsection (5)(c) to situations in which the agricultural use is primary. But I think that this limitation is implied by the provision's text.

Subsection (5)(c) applies when a dwelling is "occupied by the owner or manager of *the farm*" (emphasis added). Because "farm" connotes agricultural activity on a scale larger than is typical of residential properties, I think (5)(c) was intended to apply only when the agricultural use is primary. And I see similar textual evidence in related code provisions that allow dwellings in other agricultural settings. *See* Code arts. 4–501(B)(5)(a) (applies to a dwelling occupied by the owner, operator, or manager of a feed yard), 4–502(A)(5)(b) (applies to a dwelling occupied by the owner, operator, or manager of a commercial nursery), 4–502(B)(5)(e) (applies to a dwelling occupied by the owner or manager of an equestrian center), 4–502(C)(5)(a) (applies to a dwelling occupied by the owner, operator, or manager of a farm stand business).

### 3. *Practical Consequences*

Under the majority's view, it does not matter whether a property is plainly residential. Any open agricultural use (such as a vegetable garden) will automatically convert the property's principal use to one of "open agriculture." This, in turn, will trigger further automatic consequences, such as the right to board horses and build "[i]mproved riding facilities" under article 4–502(E)(5)(d). I do not think that the drafters intended such results.

Because the code does not explicitly resolve the issue presented, I conclude that it is ambiguous. I further conclude that the board's decision is consistent with a defensible interpretation of the code. I therefore would reverse the district court's ruling and remand with directions to affirm the board's decision.